UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAVARIS MARQUEZ TUBBS,

                               NO. CIV. S-06-280 LKK/GGH

        Plaintiff,

   v.

                                 O R D E R

SACRAMENTO COUNTY JAIL, et al

        Defendants.

_____/

     The plaintiff is a former inmate of the Sacramento County Jail who has brought suit under 42 U.S.C. § 1983 for defendants' allegedly illegal conduct in removing him from his cell on January 21, 2006. In the instant motion, all defendants move for summary judgment on all of plaintiff's causes of action.

     The court resolves the motion on the papers and after oral argument. For the reasons stated herein, the court grants the motion in part and denies it in part.

////

////

////

1

1                              **I. FACTS**[1]

2  **A.    Incident Giving Rise to Plaintiff's Claims**

3       On January 21, 2006, the plaintiff was a pretrial detainee

4  at the Sacramento County Main Jail. Compl. ¶¶ 4, 26. Defendants

5  Cherry, Shelly, Kacalek, Vasquez, and Miller were officers at

6  the jail. Id. ¶¶ 12-16. Defendants Isenogle and Parker were

7  sergeants at the jail and were on duty during the times relevant

8  for plaintiff's complaint. Id. ¶¶ 10-11. Defendant Iwasa was

9  Jail Commander and defendant Blanas was Sheriff of Sacramento

10  County . Id. ¶¶ 6, 8.

11       Defendant's version of the incident is that on that day,

12  the plaintiff was in his cell and had created a disruption.

13  Defendants Cherry, Shelly, Kacalek, Vasquez and Miller entered

14  ───────────────

15       [1] All facts are undisputed unless otherwise indicated.
     Defendants object to several pieces of evidence offered by
16  plaintiff in support of his opposition to the motion for summary
     judgment. Several of these objections raise issues of foundation,
     which presumably could be cured by plaintiff at trial. See Burch
17  v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1122 (E.D. Cal.
     2006). These objections are therefore OVERRULED.
18       Defendants also object to the plaintiff's reliance on the
     declaration of the purported expert Daniel B. Vasquez. According
19  to the court's scheduling order, expert witnesses were required to
     be designated and their reports filed and served no later than
20  February 22, 2008. Scheduling Order, August 1, 2007, at 5.
     Plaintiff did not disclose Mr. Vasquez nor file and serve his
21  report by that date; the first document filed in the case
     identifying Mr. Vasquez and describing his opinions was his
22  declaration in support of plaintiff's opposition to the motion for
     summary judgment. The plaintiff has not shown that an exception to
23  the deadline is warranted here. See Scheduling Order, August 1,
     2007, at 5-6 (providing three criteria that must be met in order
24  for an expert witness who was not timely disclosed on the party's
     witness list to be permitted to testify at trial). Accordingly,
25  defendants' objection to his declaration is SUSTAINED and the court
     disregards plaintiff's reliance on it for the purposes of resolving
26  the instant motion. See Fed. R. Civ. P. 37(c).

1   his cell. Defendant Vasquez took hold of plaintiff's right arm

2   and Kacalek held plaintiff's left arm. Defendant Cherry held

3   plaintiff's feet. Shelly stood behind plaintiff. Defendant

4   Miller has testified that he also stood behind plaintiff,

5   although plaintiff testified that Miller picked him up by the

6   feet, along with defendant Cherry. Declaration of Wendy Motooka

7   in Support of Defendants' Motion for Summary Judgment ("Motooka

8   Decl.") ¶ 7, Ex. F (Deposition of Jason Miller at 30:9-10);

9   Deposition of Javaris Tubbs at 21:14-21:15 (Doc. No. 82-2).

10      The officers attempted to handcuff plaintiff. Defendant

11  Kacalek testified that plaintiff balled his fists and resisted

12  being handcuffed. Motooka Decl. Ex. A (Deposition of Ryan

13  Kacalek at 24:25-25:6). Defendant Kacalek instructed him to stop

14  resisting and to unclench his fists. Id. According to Kacalek,

15  plaintiff then hit Kacalek's leg with his fist and moved his

16  fist towards Kacalek's groin. Id.; see also id. Ex. E

17  (Deposition of Sonny Vasquez at 35:12-14 (testifying that

18  plaintiff was moving his arms while defendants attempted to

19  subdue him)). The officers then gained control of plaintiff's

20  arm and placed him in a rear wrist lock, which entailed securing

21  plaintiff's arm behind his back, and in an "arm bar" control

22  hold. Id. Ex. A (Deposition of Ryan Kacalek at 25:7-25:14); Ex.

23  E (Deposition of Sonny Vasquez at 35:22-36:19). During this

24  time, defendant Cherry held plaintiff's legs with a "Figure Four

25  hold." Id. Ex. G (Deposition of Mark Cherry at 31:25-32:10).

26      Plaintiff's version of events differs from defendants'. He

                                    3

1   has testified that immediately upon entering his cell, the
2   officers picked him up by his limbs and slammed him to the
3   ground. Tubbs Depo. at 21:8-21:15. While officers used "arm
4   techniques" on plaintiff, plaintiff contends that he was in pain
5   and repeatedly asked why the officers were "doing this." Id. at
6   22:12-22:24. The officers told him that he was resisting and
7   that his fists were balled. Id. at 23:1-23:2. Plaintiff
8   contends, however, that he was not resisting during this time,
9   that his fists were "closed" not balled, and that he never tried
10  to pull his hands away from the officers. Id. at 22:17-23:6.

11      During this event, the plaintiff's arm was broken. Motooka
12  Decl. Ex. E (Deposition of Sonny Vasquez at 36:23-37:15). The
13  plaintiff testified that one of the officers had twisted his arm
14  until it broke, and that his fists were open at the time. Tubbs
15  Decl. at 23:14-23:22. When it happened, he heard defendant
16  Vasquez say, "I f-ing broke his arm." Id. at 23:25-24:8. He was
17  then handcuffed. Id. at 24:15-24:19; Motooka Decl. Ex. E. After
18  handcuffing him, the officers took the plaintiff to the medical
19  floor.

20      During the incident, defendant Isengole waited outside the
21  cell and observed what occurred. Motooka Decl. Ex. D (Deposition
22  of Brian Isengole at 44:2-44:9). Defendant Parker also waited
23  outside the cell. Id. Ex. E (Deposition of Sonny Vasquez at
24  27:10-27:12); Ex. F (Deposition of Jason Miller at 45:1-45:3).

25  **B.   Plaintiff's Grievances**

26      On January 24, 2006, the plaintiff submitted a grievance

                              4

relating to the medical care he received after this incident. In it, he stated that his arm had been injured by a staff member and identified this person as "McMahon." Doc. No. 82-2 at 84. The documents shows that it was received on January 24, 2006 by an officer. Id.

On March 9, 2006, the plaintiff submitted another grievance. Id. at 85. This grievance complained of the officers' force used in the incident on January 21. He identified defendants Vasquez and Kacelek as having "viscously" taken hold of him and "wrenched" his arms behind his back, breaking an arm. Id. He described several unidentified officers as having been involved as well. Id. Finally, he added, "It should be noted that I have twice (2) attempted to submit a grievance on this issue, and on both occasions the grievances were taken by floor officers with no return copy or response." Id. The March 9 grievance form shows that it was received by an officer on March 11, 2006. Id. In the block for the receiving officer's signature there is a notation that reads, "Inmate requested grievance to be forwarded to Facility Commander." Id. Plaintiff testified in his deposition that this grievance may have been his fourth or fifth attempt to submit a grievance regarding the use of force against him during the January 21, 2006 cell removal. Tubbs Depo. at 66:10-66:12.

On March 26, 2006, Lieutenant Richard Anglemoyer responded to the plaintiff's March 9, 2006 grievance. He apologized if the plaintiff did not receive copies of his prior grievances. Doc.

5

1  No. 82-2 at 87. He stated that the amount of force used against

2  him was "appropriate" based on plaintiff's behavior at the time.

3  Id.

4      On April 4, 2006, the plaintiff submitted another grievance

5  form that stated that it was intended for the facility commander

6  "in response to a grievance reply that [he] received from

7  Lieutenant Richard Anglemoyer." Id. at 86. In it, the plaintiff

8  complained that Lieutenant Anglemoyer's characterization of

9  plaintiff's behavior on January 21, 2006 was "totally false."

10 Id. There is no evidence tendered to the court that plaintiff

11 received a response to this document.

12 **C.    Procedural History**

13     Plaintiff's complaint was filed on February 9, 2006. On

14 February 27, 2007, plaintiff was appointed counsel. After

15 plaintiff filed a second amended complaint, defendants moved for

16 judgment on the pleadings on the grounds that there were

17 insufficient allegations pled against defendants Isengole,

18 Parker, Shelly and McMahon. The court granted the motion with

19 leave to amend. Order, February 27, 2008. Shortly thereafter,

20 plaintiff filed his Fourth Amended Complaint, which the

21 defendants answered.

22 **II. STANDARD FOR SUMMARY JUDGMENT UNDER FEDERAL RULES OF CIVIL**

23                       **PROCEDURE 56**

24     Summary judgment is appropriate when there exists no

25 genuine issue as to any material fact. Such circumstances

26 entitle the moving party to judgment as a matter of law. Fed. R.

1   Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S.

2   144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853

3   (9th Cir. 1995). Under summary judgment practice, the moving

4   party

5       always bears the initial responsibility of informing
        the district court of the basis for its motion, and
6       identifying those portions of "the pleadings,
        depositions, answers to interrogatories, and
7       admissions on file, together with the affidavits, if
        any," which it believes demonstrate the absence of a
8       genuine issue of material fact.

9   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

10  R. Civ. P. 56(c)).

11      If the moving party meets its initial responsibility, the

12  burden then shifts to the opposing party to establish the

13  existence of a genuine issue of material fact. Matsushita Elec.

14  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986);

15  see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S.

16  253, 288-89 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the

17  opposing party may not rely upon the denials of its pleadings,

18  but must tender evidence of specific facts in the form of

19  affidavits and/or other admissible materials in support of its

20  contention that the dispute exists. Fed. R. Civ. P. 56(e); see

21  also First Nat'l Bank, 391 U.S. at 289. In evaluating the

22  evidence, the court draws all reasonable inferences from the

23  facts before it in favor of the opposing party. Matsushita, 475

24  U.S. at 587-88 (citing United States v. Diebold, Inc., 369 U.S.

25  654, 655 (1962) (per curiam)); County of Tuolumme v. Sonora

26  Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001). Nevertheless,

7

1  it is the opposing party's obligation to produce a factual

2  predicate as a basis for such inferences. See Richards v.

3  Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The

4  opposing party "must do more than simply show that there is some

5  metaphysical doubt as to the material facts . . . . Where the

6  record taken as a whole could not lead a rational trier of fact

7  to find for the nonmoving party, there is no 'genuine issue for

8  trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

9  ### III. ANALYSIS

10      Plaintiff alleges two causes of action: (1) excessive use

11  of force during a cell extraction by the individual defendants

12  and (2) municipal and supervisory liability for the same,

13  brought against defendants County of Sacramento, Isengole,

14  Blanas, Parker, and Iwasa.[2] Both claims are pled 42 U.S.C. §

15  1983.

16      For the reasons stated herein, the court grants defendants'

17  motion as to defendants Blanas and Iwasa. The motion is denied

18  as to all other defendants named in the plaintiff's first and

19  second causes of action.

20  **A.   Exhaustion of Administrative Remedies**

21      Under the Prison Litigation Reform Act, an inmate may not

22  bring suit until he has exhausted his administrative remedies.

23  42 U.S.C. § 1997e; Porter v. Nussle, 534 U.S. 516, 519-20

24  

25      [2]The plaintiff has abandoned his third and fourth causes of
    action, relating to the medical care he received at the jail.
26  Defendants' motion is therefore GRANTED as to these claims and as
    to defendant Glen Douglas, M.D.

(2002). Exhaustion occurs when the inmate has fully complied with the grievance procedures of the facility where he is housed. Woodford v. Ngo, 548 U.S. 81, 89-91 (2006). The inmate's grievance need not name all future defendants in order to be adequate. Jones v. Bock, 549 U.S. 199 (2007).

Non-exhaustion is an affirmative defense that the defendant bears the burden to prove. Brown v. Voloff, 422 F.3d 926, 936 (9th Cir. 2005). In order to show non-exhaustion, a defendant could submit such evidence as the regulations or statutes governing the grievance process, testimony from administrators who administer the process, and information provided to prisoners describing the grievance process. Id. at 937. Of these, information provided to the prisoner is especially relevant. Id.

A prisoner only has a duty to exhaust those remedies that are "available" to him. Booth v. Churner, 532 U.S. 731, 736 (2001); Brown, 422 F.3d at 935. "Once there is no further possibility that corrective action [will be] taken in response to an inmate's grievance, there is no hope that the inmate might be satisfied by relief other than that requested." Brown, 422 F.3d at 936 (internal citations omitted). When the inmate has reached this point in the grievance process, his seeking further administrative remedies is both "pointless" and not required by the PLRA. Id. Accordingly, an inmate has no further administrative remedies available to him for exhaustion purposes if, for example, prison officials have told him he could not

1  file a grievance, or the grievance regulations were sufficiently
2  confusing, or the prisoner reasonable misunderstood the
3  grievance system. Id. (citations omitted).

4      California regulations require county jails to develop
5  procedures to resolve inmate grievances. Cal. Code Regs. Tit. 15
6  § 1073. These procedures must include (1) a grievance form or
7  instructions for making a grievance; (2) the opportunity to
8  resolve grievances at the lowest appropriate staff level; (3)
9  appeal to the next level of review; (4) written reasons for
10 denial at each level that considers the grievance; (5)
11 reasonable time limits for responding to grievances; and (6)
12 provision for resolving questions of jurisdiction within the
13 facility. Id.

14     The Sacramento County Main Jail has developed a grievance
15 review system. An inmate first makes an oral grievance to his
16 Housing Floor Officer. Declaration of Brian Isengole In Support
17 of Defendants' Motion for Summary Judgment ("Isengole Decl.") ¶
18 14, Ex. B (Main Jail Inmate Handbook). If his problem is not
19 resolved satisfactorily, he can request a grievance form. Id.
20 When the grievance pertains to an incident, the inmate must file
21 his form within ten days of the incident. Id. Grievances are
22 then given to the Housing Floor Officer or mailed to the
23 Facility Commander. Id. Replies are then given to the inmate
24 within fifteen days of the receipt of the grievance form. Id.

25     As is explained below, the defendants have not met their
26 burden to prove that the plaintiff failed to exhaust his

1  administrative remedies. First, although the plaintiff's

2  grievance regarding the January 21, 2006 incident was not filed

3  within ten days of its occurrence, the plaintiff has presented

4  evidence that he did file earlier grievances regarding the

5  incident, which were ignored.[3] On his March 9, 2006 grievance

6  form, he complained of having attempted twice earlier to file a

7  grievance about the incident, but that those forms were "taken

8  by floor officers with no return copy or response." Doc. No. 82-

9  2 at 85. He reiterated this in his deposition testimony. Tubbs

10 Depo. at 63:11-64:5, 66:1-66:12. When a prison official thwarts

11 an inmate's attempt to timely file a grievance, that thwarting

12 cannot later be used as a defense against the inmate's

13 subsequent suit. Brown, 422 F.3d at 936 (prison official telling

14 an inmate that he could not file a grievance meant that the

15 administrative remedy was effectively unavailable to the

16 inmate). The defendant has not tendered any evidence that the

17 plaintiff did not attempt to file a timely grievance and was

18 ─────────────────────

19 [3]Although plaintiff contends that his January 24, 2006 grievance form included a grievance about the force used against him in the January 21, 2006 cell removal, there is some doubt that

20 is a fair characterization. In the January 24 grievance, plaintiff described exclusively the quality of the medical care he received.

21 The only mention of force used against him was the introductory phrase, "My right arm was injured by a staff member (McMahon Badge

22 # 200) on Saturday 1-21-06 . . . ." The purpose of the exhaustion requirement is to allow prison officials to address complaints

23 internally and take corrective action. Porter v. Nussle, 534 U.S. 516, 525 (2002). Necessarily, this requires that the grievance

24 contain at least minimal detail so as to put the prison officials on notice of the conditions or incident of which the inmate is

25 complaining. On the other hand, inmates aren't lawyers.  Because determination as to whether the January 24 grievance is sufficient

26 is unnecessary to resolution of the motion, it will not be made.

1  thwarted, as he asserts.

2  Moreover, according to the evidence of Sacramento County

3  Main Jail's inmate grievance procedure that defendants have

4  tendered to the court, it appears that an inmate at the jail

5  exhausts his administrative remedies simply by filing the

6  grievance form with the proper person in a timely manner.

7  Isengole Decl. Ex. B. The Main Jail Inmate Handbook does not

8  describe an appeals process nor any type of review that an

9  inmate may pursue after receiving a response to his grievance

10  form. Id. Indeed, defendants have tendered no evidence that such

11  a process exists.[4] In sum, defendants have not shown that

12  plaintiff did not exhaust his administrative remedies when he

13  filed his March 9, 2006 grievance form.[5] See Brown, 422 F.3d at

14  _____

15  [4]Although plaintiff's claims do not challenge the adequacy of
the Sacramento County Main Jail's grievance procedures, the court
16  cannot help but observe that they appear not to comply with
California Regulations in several respects. See Cal. Code Regs.
17  Tit. 15 § 1073. Again, because a determination is unnecessary for
resolution of the motion, no future consideration is given to the
18  issue.

19  [5]Even if an appeals process exists, the evidence before the
court shows that on April 4, 2006 plaintiff responded to the denial
20  of his grievance. There is no evidence that the jail or its staff
responded to this "appeal." When a facility does not respond to an
21  inmate appeal, the inmate must be deemed to have exhausted the
available administrative review process. Brown, 422 F.3d at 935;
22  see also Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)
(failure to respond to a grievance within the time limits contained
23  in the grievance policy renders an administrative remedy
unavailable); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir.
24  2002) ("we refuse to interpret the PLRA 'so narrowly as to . . .
permit [prison officials] to exploit the exhaustion requirement
25  through indefinite delay in responding to grievances'"); Foulk v.
Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (once prison failed to
26  respond to grievance, no further administrative proceedings were
available to prisoner).

1  937.

2  **B.    Excessive Force Claim Against Defendants Cherry, Shelly,**

3  **Kacalek, Vasquez, Miller, Parker and Isenogle**

4  The Fourth Amendment governs excessive force claims brought

5  by pretrial detainees. Lolli v. County of Orange, 351 F.3d 410,

6  415 (9th Cir. 2003). A plaintiff's claim fails upon the

7  officers' showing that the force used was "objectively

8  reasonable in light of the facts and circumstances confronting

9  them, without regard to their underlying intent or motivation."

10 Id. (internal quotations omitted). Summary judgment on these

11 claims "should be granted sparingly," as they often involve

12 competing versions of facts and inferences, the resolution of

13 which is a quintessential jury function. Id. at 415-16 (internal

14 quotations omitted).

15 Here, the plaintiff has tendered sufficient evidence to

16 show that a jury could find that the officer defendants engaged

17 in excessive force in violation of the Fourth Amendment. There

18 is evidence that defendants Vasquez and Kacalek restrained

19 plaintiff's arms. Motooka Decl. Ex. A (Deposition of Ryan

20 Kacalek at 25:7-25:14); Ex. E (Deposition of Sonny Vasquez at

21 35:22-36:19). There is evidence that, if credited, tends to show

22 that plaintiff was not resisting or threatening the officers at

23 the time. Tubbs Depo. at 22:17-23:6. Plaintiff also testified

24 that the officers used so much force on his arms so as to cause

25

26

1    him great pain and to ultimately break his arm, which was then

2    handcuffed. Id. at 22:12-22:24, 23:25-24:8. A reasonable jury

3    could conclude from these facts that officers Vasquez and

4    Kacalek's actions were objectively unreasonable.

5        Moreover, a reasonable jury could find that the remaining

6    officers were so integrally involved in the removal of the

7    plaintiff from his cell that they are also liable for the

8    Constitutional violation. "An officer's liability under section

9    1983 is predicated on his integral participation in the alleged

10   violation." Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.

11   12 (9th Cir. 2007). This liability does not depend on each

12   officer's acts rising individually to the level of

13   Constitutional violations. Boyd v. Benton County, 374 F.3d 773,

14   780 (9th Cir. 2004). For example, in Blankenhorn, the Ninth

15   Circuit held that a reasonable jury could find that officers'

16   use of hobble restraints on the plaintiff violated his Fourth

17   Amendment rights. 485 F.3d at 480. Liability, however, was not

18   restricted to only that officer who had placed the restraint on

19   the plaintiff. The officer who had handcuffed the plaintiff so

20   as to allow the hobble restraints to be placed on him, the

21   officer who ordered the use of hobble restraints, and the

22   officers who "tackled" the plaintiff prior to the application of

23   the restraints all were integral participants in the use of

24   excessive force and therefore also could be liable. Id. at 481

25   n. 12; see also Boyd, 374 F.3d at 780 (entire group of officers

26   who had participated in a search operation for a suspect in

14

1  which a "flash-bang" device had been used could be liable as

2  integral participants); <u>Lolli</u>, 351 F.3d at 417 (officers were

3  integral participants in the unlawful beating of plaintiff

4  because they had some physical contact with him during the

5  altercation, including holding him down and spraying him with

6  pepper spray).

7      Here, the testimony of the individual defendants and the

8  plaintiff suffices to permit a reasonable jury to conclude that

9  defendants Vasquez, Kacalek, Cherry, Shelly, Miller, Isenogle

10  and Parker were integral participants in the use of excessive

11  force against plaintiff. As discussed above, a jury could find

12  that either defendant Vasquez or Kacalek, or both, acted

13  objectively unreasonably in restraining plaintiff's arms. During

14  this time, the remaining officers who held plaintiff (or, if

15  plaintiff's version of events is credited, who slammed him to

16  the ground) could be found to have facilitated this use of force

17  in an integral way. <u>See</u> Tubbs Depo. 21:8-21:15. This circuit's

18  precedent is clear that this type of participation suffices to

19  create section 1983 liability. <u>See</u> <u>Blankenhorn</u>, 485 F.3d at 481,

20  n. 12; <u>Lolli</u>, 351 F.3d at 417.

21      Although the evidence tendered to the court shows that

22  defendants Shelly, Isenogle and Parker only stood nearby and did

23  not touch plaintiff during the incident, a reasonable jury could

24  find that they were integral participants as well. It is

25  undisputed that defendants Isenogle and Parker did not enter

26  plaintiff's cell and that defendant Shelly entered the cell and

15

1  stood behind plaintiff. SUF ¶¶ 3, 4, 6. The evidence tendered

2  shows that defendants Isenogle and Parker stood outside the cell

3  and watched what occurred. Motooka Decl. Ex. D (Deposition of

4  Brian Isenogle at 44:2-44:9); Ex. F (Deposition of Jason Miller

5  at 44:18-44:23, 45:1-45:3). A reasonable jury could deduce that

6  these defendants were there to provide back-up to the other

7  officers or they were supervisors and they did not object to the

8  force that was being used against plaintiff during the incident.

9  Both of these factors tend towards a jury's finding that

10  defendants Shelly, Isenogle, and Parker were liable. See Boyd,

11  374 F.3d at 780 (defendants were integral participants in the

12  use of a flash-bang device for, *inter alia*, standing armed

13  behind the officer who detonated it and for not objecting to its

14  use).

15  **C.   Liability of the County of Sacramento, Blanas and Iwasa**

16  A public entity may only be liable under § 1983 if the

17  constitutional violation occurred as a result of an official

18  municipal policy or custom. Monell v. New York Dep't of Soc.

19  Serv., 436 U.S. 658, 691 (1978). A custom that is not official

20  agency policy may create § 1983 liability if it is "permanent

21  and well-settled." Id. An agency may not be liable on a

22  *respondeat superior* theory, but only if there is evidence that

23  there is "an affirmative link between the policy and the

24  specific constitutional violation alleged." City of Oklahoma v.

25  Tuttle, 471 U.S. 808, 821 (1985). The policy must display a

26  deliberate indifference to the plaintiff's rights, which is

1   usually a jury question. <u>Gibson v. County of Washoe</u>, 290 F.3d

2   1175, 1194-95 (9th Cir. 2002).

3       The plaintiff here has tendered evidence that would permit

4   the jury to conclude that there was a policy or practice in

5   place at the Sacramento County Main Jail that was the moving

6   force behind the violation he alleges. He has tendered evidence

7   of the results of an investigation by the District Attorney's

8   office on the use of force against inmates at the Sacramento

9   County Main Jail around the time of the incident of which

10  plaintiff complains. Doc. No. 82-2 at 16-31. This investigation

11  was prompted by the Jail staff's and Sheriff Department's use of

12  force in response to a December 1, 2005 disturbance created by

13  several inmates who had flooded their cells. <u>Id.</u> at 16. The

14  District Attorney concluded that the officers' use of force on

15  that date was not so unreasonable as to be criminal, but that

16  "this case raise[d] significant questions regarding jail

17  operations and the treatment of inmates." <u>Id.</u> at 31. The

18  District Attorney found that "[t]he evidence supports findings

19  of poor judgment by jail staff, lack of administrative

20  supervision and a need to review Operations Orders pertaining to

21  the use of force in the Main Jail." <u>Id.</u> When, as is alleged

22  here, an agency demonstrates a pattern of disregard of official

23  procedures and lack of supervision at the peril of the inmates

24  it is charged to protect, <u>Monell</u> liability may attach. See <u>City</u>

25  <u>of Canton v. Harris</u>, 489 U.S. 378, 389-91 (1989) (where a public

26  entity commits "obvious" errors in performing its function and

1  "the inadequacy [is] so likely to result in the violation of

2  constitutional rights, . . . the policymakers of the city can

3  reasonably be said to have been deliberately indifferent to the

4  need"). Plaintiff's evidence that the County of Sacramento

5  possessed such a pattern shortly before the incident on January

6  21, 2006 would suffice to allow a reasonable jury to conclude

7  that the County of Sacramento had a "well-settled" pattern of

8  deliberate indifference to inmates' rights vis-a-vis use of

9  force, and that this pattern was the moving force in the

10  violations against the plaintiff. Accordingly, summary judgment

11  must be denied as to the County.

12      Similarly, summary judgment must also be denied as to

13  defendants Blanas and Iwasa, the Sheriff of Sacramento County

14  and Jail Commander, respectively. Although § 1983 liability will

15  not lie simply on a theory of *respondeat superior,* Monell v.

16  Dep't of Social Services, 436 U.S. 658, 691-92 (1978),

17  defendants Blanas and Iwasa may be liable if the plaintiff shows

18  that they directed or participated in the violations or knew of

19  their occurrence and failed to prevent them. Taylor v. List, 880

20  F.2d 1040, 1045 (9th Cir. 1989). Here, plaintiff has tendered

21  evidence of a policy of inappropriate force, lack of

22  supervision, and failure to adhere to official policies when

23  removing inmates from their cells. These failures, particularly

24  to the extent that they demonstrate a lack of appropriate

25  supervision and training, necessarily implicate defendants

26  Blanas and Iwasa in their management roles. The evidence

1  tendered is sufficient to defeat defendants' Blanas' and Iwasa's

2  summary judgment motions. <u>See</u> <u>Soto v. City of Sacramento</u>, 567 F.

3  Supp. 662, 676 n. 14 (E.D. Cal. 1983).

4  **D.   Immunity of Individual Defendants**

5       A government official is immune from liability for

6  discretionary functions, so long as the official's conduct "does

7  not violate clearly established statutory or constitutional

8  rights of which a reasonable person would have known." <u>Harlow v.</u>

9  <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982). The determination of

10  whether or not a state official enjoys qualified immunity

11  proceeds in two parts. First, the court must determine whether

12  the facts show that the official's conduct violated a

13  constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

14  If so, the court undertakes the second step of the analysis,

15  which is whether the constitutional right was "clearly

16  established" at the time of the violation. <u>Id.</u> A right is

17  clearly established if a reasonable official would have

18  understood that his actions violated that right. <u>Id.</u> at 202.

19       Here, there is evidence sufficient to defeat the

20  defendants' motion for summary judgment on this issue. As

21  explained above, a reasonable jury could conclude that the

22  plaintiff's Fourth Amendment rights were violated in the use of

23  force against him in his cell on January 21, 2006.

24       If so, a reasonable jury could also find that reasonable

25  officials in the individual defendants' positions would have

26  known that the force used against him in on January 21, 2006 was

1  unlawful. It is a settled principle that the use of excessive

2  force against an inmate violates the Fourth Amendment. <u>Graham v.</u>

3  <u>Connor</u>, 490 U.S. 386 (1989). If a jury were to credit the

4  plaintiff's version of the events that occurred on January 21,

5  2008, they could conclude that those defendants should have

6  known that the amount of force used against him was beyond that

7  which the situation warranted and therefore was unreasonable.

8  <u>See</u> <u>Blakenhorn</u>, 485 F.3d at 481 (holding that officers enjoyed

9  no qualified immunity because "force is only justified when

10  there is a need for force"). If plaintiff's version is credited,

11  no reasonable officer could believe that it was lawful to take

12  hold an inmate who was not resisting and slam him to the ground,

13  then twist his arm so forcefully that it broke. Accordingly,

14  defendants Cherry, Shelly, Kacalek, Vasquez, Miller, Parker,

15  Isenogle, Iwasa, and Blanas are not entitled to qualified

16  immunity for their participation in the January 21, 2006 removal

17  of the plaintiff from his cell. Their motion for summary

18  judgment is denied.

**IV. CONCLUSION**

20  Accordingly, the court orders as follows:

21  1.    Defendants' motion for summary judgment is DENIED on

22        plaintiff's first and second causes of action.

23  2.    The motion is GRANTED as to defendant Douglas.

24  ////

25  ////

26  ////

3.   The motion is GRANTED on plaintiff's third and fourth

causes of action.

IT IS SO ORDERED.

DATED:  August 13, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT